UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



UNITED STATES DISTRICT COURT
FILED
FEB 05 2019
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

———————————————————————

ALEX J. COLE, individually and on behalf of
others similarly situated,

        Plaintiff,

    v.

STEPHEN EINSTEIN & ASSOCIATES, P.C.
and SECOND ROUND, L.P. d/b/a/ Third Round,
L.P.,

        Defendants.

———————————————————————

**DECISION AND ORDER**

6:18-cv-06230 EAW

## **INTRODUCTION**

Plaintiff Alex J. Cole ("Plaintiff") commenced this putative class action, on behalf of himself and others similarly situated, on March 20, 2018, alleging that defendant Stephen Einstein & Associates, P.C. ("Einstein") and Second Round, L.P. d/b/a Third Round, L.P. ("Second Round") (collectively, "Defendants") sought to collect a debt from Plaintiff and others in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). (Dkt. 1). Plaintiff claims that the collection letter he received from Einstein failed to articulate that the "charges or fees" identified therein related only to those incurred after Plaintiff's debt had been charged off. (*See* Dkt. 20 at 6). According to Plaintiff, Einstein's letter was misleading because it could be interpreted as reflecting all charges or fees incurred since the account's inception. (Dkt. 25 at 11). Plaintiff also claims that because his credit account had accrued interest at a rate exceeding that permitted by New York's usury statutes while the balance was pending with the original creditor,

Defendants unlawfully attempted to take or receive interest in violation of New York law by seeking to collect the principal due after the account was charged off. (*See* Dkt. 20 at 7-8; Dkt. 25 at 19-22).

Presently before the Court are Defendants' motion to dismiss for failure to state a claim and request for sanctions (Dkt. 22), and Plaintiff's cross-motion for sanctions (Dkt. 25). For the following reasons, Defendants' motion to dismiss is granted, Plaintiff's Amended Complaint is dismissed, and Defendants' and Plaintiff's respective motions for sanctions and costs are denied.

## BACKGROUND

The following facts are drawn from Plaintiff's Amended Complaint unless otherwise indicated and are assumed true for purposes of this motion. (Dkt. 20). On April 12, 2017, Einstein mailed a letter to Plaintiff seeking to collect an alleged debt relating to a Lowe's credit card account (the "Letter"). (*Id.* at ¶¶ 13-14; *see* Dkt. 20-1). Although the Letter stated, "CHARGES OR FEES: $0.00," Plaintiff alleges that, "[u]pon information and belief, substantial amounts of late fees have accrued on this account." (*Id.* at ¶¶ 15-16). Plaintiff further alleges that "interest at the rate of 26.99% APR had accrued on this credit card." (*Id.* at ¶ 17). In addition, because Second Round allegedly "controls, approves, supervises, and oversees Einstein's collection activities" (*id.* at ¶ 18), "Einstein is Second Round's agent" (*id.* at ¶ 19).

Plaintiff has identified two putative classes, one for each cause of action asserted in his Amended Complaint. (*Id.* at 3-9). Plaintiff alleges that members of the first putative class were harmed because, "[b]y falsely stating that the amount of accrued charges or fees

was '$0.00,' Einstein made a false and misleading representation in violation of 15 U.S.C. § 1692e." (*Id.* at ¶ 38). Plaintiff also states that because "interest at the rate of 26.99% APR had accrued on this credit card[,] . . . Einstein attempted to collect interest at a rate which exceeds New York's maximum rate under its criminal usury state." (*Id.* at ¶¶ 52-53). As a result, Plaintiff claims that members of the second putative class were harmed by Einstein's misrepresentation of the "character, legal status, or amount of the debt" as well as its ability to collect interest above the rate set by New York's criminal usury statute, and by Einstein's threat "to collect interest which could not legally be collected" and its collection of interest in "[a]n amount which was not permitted by New York law," all in violation of 15 U.S.C. §§ 1692e, (2)(A), (5), and 1692f(1). (*Id.* at ¶¶ 54-57). Plaintiff further alleges that Second Round is vicariously liable for Einstein's conduct because Einstein is Second Round's agent. (*Id.* at ¶¶ 43-44, 60-61). Plaintiff seeks statutory and actual damages on behalf of himself and the members of the putative classes as well as recoupment of reasonable attorney's fees. (*Id.* at 9-10).

## PROCEDURAL HISTORY

On March 20, 2018, Plaintiff commenced this putative class action against Defendants, alleging that the Letter constituted "a false and misleading representation in violation of 15 U.S.C. § 1692e." (Dkt. 1 at ¶ 36). On May 4, 2018, Defendants filed a motion to dismiss Plaintiff's complaint (the "first motion to dismiss"). (Dkt. 17). Defendants' notice of motion did not indicate whether they intended to submit reply papers in further support of their motion. (*See id.*). Fourteen days later, Defendants filed an "amended motion to dismiss." (Dkt. 19). The amended motion to dismiss consisted solely

- 3 -

of an amended notice of motion that stated Defendants' intent to file reply papers in support of the first motion to dismiss. (*Id.*).

On May 22, 2018, Plaintiff filed his Amended Complaint, which remains the operative pleading in this matter. (Dkt. 20). Three days later, Plaintiff filed his response to Defendants' first motion to dismiss, arguing that the motion had been rendered moot as a result of his filing of the Amended Complaint. (Dkt. 21). On June 5, 2018, Defendants filed a third motion to dismiss, which also included a request for court-ordered sanctions and costs. (Dkt. 22). Plaintiff opposes Defendants' third motion to dismiss. (Dkt. 25). On July 11, 2018, the Court granted Plaintiff's request to file a sur-reply in further opposition to Defendants' third motion to dismiss (Dkt. 28), which was filed the next day (Dkt. 29). On November 2, 2018, Defendants filed a notice of supplemental authority, drawing the Court's attention to a recent Second Circuit decision. (Dkt. 30).

## DISCUSSION

I. **Defendants' First and Amended Motions to Dismiss Are Dismissed as Moot**

After Plaintiff filed his original Complaint on March 20, 2018 (Dkt. 1), Defendants filed the first motion to dismiss on May 4, 2018 (Dkt. 17). Two weeks later, Defendants filed an amended notice of motion, belatedly indicating their intent to file reply papers in support of the first motion to dismiss.[1] (Dkt. 19); *see* L.R. Civ. P. 7(a)(1) ("A moving party

---

[1]     Although this amended notice of motion was filed as a separate motion to dismiss, it appears that Defendants, for all intents and purposes, were prepared to rely on their first motion to dismiss to challenge Plaintiff's original Complaint. Defendants filed the amended motion to dismiss simply to comply with this Court's Local Rules, and that "motion" is in no other way distinct from the first motion to dismiss. In other words, the Court sees no reason why the amended motion to dismiss should have been filed as a

who intends to file and serve reply papers must so state in the notice of motion."). On May 22, 2018, four days later, Plaintiff filed his Amended Complaint. (Dkt. 20).

Pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, "[a] party may amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b). . . ." Accordingly, Plaintiff's Amended Complaint was timely filed within 21 days after Defendants filed their first two motions to dismiss.

"It is well settled that an amended pleading ordinarily supersedes the original and renders it of no legal effect." *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000); *see Hancock v. County of Rensselaer*, 882 F.3d 58, 63 (2d Cir. 2018) (same). "When a plaintiff amends its complaint while a motion to dismiss is pending the court may den[y] the motion as moot [or] consider [ ] the merits of the motion in light of the amended complaint." *Illiano v. Mineola Union Free Sch. Dist.*, 585 F. Supp. 2d 341, 349 (E.D.N.Y. 2008) (internal quotation omitted and alterations in original); *see also McIntyre v. City of Rochester*, 228 F. Supp. 3d 241, 242 (W.D.N.Y. 2017) ("[T]he filing of the amended complaint moots the motion to dismiss the original complaint."). In this case, because Defendants have filed a third motion to dismiss that directly addresses the allegations in the Amended Complaint, the Court finds it appropriate to dismiss the first and amended motions to dismiss as moot. *See Holliday v. Augustine*, No. 3:14-CV-855 SRU, 2015 WL 136545, at *1 (D. Conn. Jan. 9, 2015) ("The defendants have filed a separate motion to

---

separate motion to dismiss. However, assuming that the amended motion to dismiss was appropriately filed, or even construing it as a separate motion for leave to file reply papers, the first motion to dismiss (Dkt. 17) and the amended motion to dismiss (Dkt. 19) are dismissed as moot for the reasons that follow.

dismiss the amended complaint which includes the arguments raised in the first motion. In light of the second motion, the motion to dismiss the original complaint is denied as moot."); *Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258, 265 (E.D.N.Y. 2014) ("In this case, the [d]efendants filed a second motion to dismiss directed at the amended complaint. Therefore, the Court finds that any consideration of the initial complaint and motion to dismiss is unnecessary and denies that motion as moot."); *Davis v. Am. Optical Corp.*, No. 11-CV-562S, 2012 WL 639698, at *3 (W.D.N.Y. Feb. 27, 2012) ("Finding the amended complaint to constitute a response to the first motion to dismiss, this Court will deny that motion as moot, and will proceed to consider the amended complaint, and [the d]efendants' second motion to dismiss."); *Bimler v. Stop & Shop Supermarket Co.*, 965 F. Supp. 292, 296 (D. Conn. 1997) ("[B]ecause Stop & Shop has filed a second motion to dismiss which incorporates the arguments made in its original motion, there is no need to separately decide both the original and the second motions to dismiss. For the sake of procedural clarity, the court recommends that the first motion to dismiss be denied.").

## II.     Defendants' Third Motion to Dismiss

### A.     Legal Standard

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all

reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2279 (2017). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

**B.    Plaintiff's First Cause of Action Fails to State a Claim Under the FDCPA**

**1.    General Principles**

"The Second Circuit has established two principles to assist courts in applying the [FDCPA]. First, 'because the FDCPA is primarily a consumer protection statute,' its terms must be construed liberally to achieve its congressional purpose." *Derosa v. CAC Fin. Corp.*, 278 F. Supp. 3d 555, 559 (E.D.N.Y. 2017) (quoting *Avila v. Riexinger & Assocs.*,

*LLC*, 817 F.3d 72, 75 (2d Cir. 2016)), *aff'd*, 740 F. App'x 742 (2d Cir. 2018). "Congress enacted the FDCPA to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 134 (2d Cir. 2017) (quoting 15 U.S.C. § 1692(e)). "The second principle is that, in considering whether a collection notice violates Section 1692e, [courts in this Circuit] apply the 'least sophisticated consumer' standard." *Avila*, 817 F.3d at 75; *see Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008) ("In this Circuit, the question of whether a communication complies with the FDCPA is determined from the perspective of the 'least sophisticated consumer.'" (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993))); *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (stating that the "least-sophisticated-consumer standard" is used to "effectuate" the FDCPA's laudable purpose of "protect[ing] consumers from deceptive or harassing actions taken by debt collectors").

"This hypothetical consumer is a 'naïve' and 'credulous' person," *Ceban v. Capital Mgmt. Servs., L.P.*, No. 17-CV-4554 (ARR) (CLP), 2018 WL 451637, at *2 (E.D.N.Y. Jan. 17, 2018) (quoting *Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191, 193 (2d Cir. 2015)), who is absent "the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer," *Avila*, 817 F.3d at 75 (quoting *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996)). "However, she is 'neither irrational nor a dolt.'" *Ceban*, 2018 WL 451637, at *2 (quoting *Ellis v. Solomon & Solomon, P.C.*, 591

F.3d 130, 135 (2d Cir. 2010)). As the Seventh Circuit has aptly explained, "[t]he 'unsophisticated consumer' isn't a dimwit. She may be uninformed, naive, [and] trusting, but she has rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009) (quotations and citations omitted); *accord Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005) ("We have observed . . . that in crafting a norm that protects the naive and the credulous the courts have carefully preserved the concept of reasonableness, and that some courts have held that even the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." (quotations and citations omitted)).

### 2.    The Letter Was Not False, Deceptive, or Misleading

The FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. "[A] collection notice can be misleading if it is 'open to more than one reasonable interpretation, at least one of which is inaccurate.'" *Avila*, 817 F.3d at 75 (quoting *Clomon*, 988 F.2d at 1319). Plaintiff argues that the Letter identified $0.00 for the itemization of any "Charges or Fees," and thus, in Plaintiff's view, it contained "a false and misleading representation" because, "[l]ike every defaulted credit card account, Plaintiff accrued late charges or fees in relation to non-payment." (Dkt. 25 at 11). Specifically, Plaintiff contends that "[o]ne reasonable interpretation of the [L]etter is that $0.00 in fees had accrued on the account *since its inception*, which Defendants' Exhibit B

shows to be false." (*Id.* (emphasis added)). Plaintiff also asserts that "[a] second reasonable interpretation is that Defendants did not add additional fees or interest after purchasing the account, which appears to be true based on their documentation." (*Id.* at 11-12).

Defendants argue that Plaintiff's first cause of action should be dismissed based upon the Second Circuit's recent decision in *Taylor v. Fin. Recovery Servs., Inc.*, 886 F.3d 212 (2d Cir. 2018). However, *Taylor* stands for the following unremarkable proposition:

> if a collection notice correctly states a consumer's balance *without mentioning interest or fees*, and no such interest or fees are accruing, then the notice will neither be misleading within the meaning of Section 1692e, nor fail to state accurately the amount of the debt under Section 1692g. If instead the notice contains no mention of interest or fees, and they are accruing, then the notice will run afoul of the requirements of both Section 1692e and Section 1692g.

886 F.3d at 215 (emphasis added). *Taylor* does not address the question presented here, to wit, whether it is reasonable to interpret a collection notice—identifying a consumer's balance and stating that zero charges or fees have accrued—as reflecting the charges or fees that have accrued since the inception of the account. Plaintiff does not appear to dispute the fact that no charges or fees were applied to his account from the time it was charged off to the point in time he received the Letter. (Dkt. 25 at 11-12 (noting that it appears, based on Defendants' documentation, that no additional fees or interest were applied to Plaintiff's account after it was purchased); *see* Dkt. 22-3 at 2). Although *Taylor* might suggest that the Letter was not misleading considering it provided *additional* account information at a time when no interest or fees were yet accruing, *Taylor* does not control the precise issue in this case. *Cf. Gissendaner v. Enhanced Recovery Co., LLC*, No. 6:18-

CV-06158(MAT), 2018 WL 6418184, at *2 (W.D.N.Y. Dec. 6, 2018) (applying *Taylor* to reject the plaintiff's argument that "because every debt accrues interest, it is misleading" to send collection letters identifying "Interest Accrued: N/A" and "Non-interest Charges & Fees: N/A," which could lead the least sophisticated consumer "to think that his or her debt had never accrued interest"), *appeal filed* No. 18-3842 (2d Cir. Dec. 28, 2018).

Nonetheless, Plaintiff's first "interpretation" of the Letter is unreasonable when evaluated under the "least sophisticated consumer" standard. By reading the "charges or fees" identified in the Letter as those that had accrued since the account's inception, Plaintiff incorrectly interprets the Letter as if it was sent by his creditor, and not his debt collector. This error in perspective was persuasively addressed by the Seventh Circuit in *Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838 (7th Cir. 2007). In *Barnes*, the plaintiffs received letters from a debt collection agency, "explain[ing] that the named credit account had been listed with the agency for collection, list[ing] the past-due amount as the 'Current Amount Due,' and promis[ing] that '[i]f paid in full[,] . . . all collection activity will be stopped.'" *Id.* at 839. The plaintiffs argued that the letters violated § 1692g of the FDCPA because they failed "to state 'the amount of the debt'" since "'the amount of the debt' is not the amount past due *currently sought by the debt collector*; it is the consumer's *overall credit card balance* with" the creditor. *Id.* (emphases added). In rejecting this argument, the Seventh Circuit noted that the plaintiffs "seem[] to forget who the defendant is," stating that it was the debt collection agency and not the creditor who sought to collect the debt set forth in the letters. *Id.* at 840. As such, "the 'amount of the debt' must be that owed to the [debt collection agency]," and "[w]hatever may be owed to [the original

- 11 -

creditor], or for that matter to any other of [the p]laintiffs' creditors, is of no consequence to this case." *Id.*

Likewise, Plaintiff also conflates Defendants with his creditors in this action. As one district court stated, "it is the relationship between *the debtor and the collection agency* that is central. Statements in the collection letter *should be interpreted* as relating to *that relationship.*" *Smith v. First Nat'l Collection Bureau, Inc.*, No. 06 C 4742, 2007 WL 4365335, at *3 (N.D. Ill. Dec. 10, 2007) (emphasis added); *see Castro v. Green Tree Servicing LLC*, 959 F. Supp. 2d 698, 709 n.11 (S.D.N.Y. 2013) ("[T]he validation notice was sent by Green Tree, a debt collector, and, accordingly, the total balance that may be owed to the creditor, Citizens Bank of Pennsylvania, is of no consequence."); *Humes v. Blatt, Hasenmiller, Liebsker & Moore, LLC*, No. 1:06-CV-985-SEB-JPG, 2007 WL 2793398, at *3 (S.D. Ind. Sept. 26, 2007) ("'[T]he amount of the debt' that must be correctly stated and itemized under §§ 1692e, g is not the entire underlying debt but the debt owed to, and sought by, the debt collector."). Plaintiff's contention that the "least sophisticated consumer" could reasonably believe that the "charges or fees" amount related to *any* charges or fees that had accrued since the account's inception, "seems to forget who the defendant is." *Barnes*, 493 F.3d at 840. As these cases illustrate, the "least sophisticated consumer" understands that the collection letter sets forth the total debt obligation pending between himself and the *debt collection agency*—whatever charges or fees that have accrued and might be owed in relation to his creditors "is of no consequence." *See id.*

The argument Plaintiff now advances is also very similar to one rejected by a district court in the Northern District of Illinois. *See Smith*, 2007 WL 4365335, at *1. In *Smith*, "[t]he dispute between the parties center[ed] on the meaning of the statement in the collection letter, 'Interest: $0.00.'" *Id.* The plaintiff "argue[d] that the word interest can also refer to finance charges accrued prior to charge-off and that because substantial interest had accrued prior to charge-off, the statement that interest was zero dollars was false." *Id.* The court first determined that the statement was "factually correct," concluding that the word "interest," "as used in the letter, indicates only post-charge-off interest." *Id.* at *2-3. Then, the court rejected the plaintiff's additional argument that the statement was misleading. *Id.* at *4. Because the plaintiff failed to demonstrate that either she or any other person was confused or misled by the letter, her argument boiled down to whether the letter was misleading if a person could interpret a term found therein "in such a way that a statement in the letter would be false." *Id.* The *Smith* court rejected this contention and granted summary judgment for the defendant.

Although *Smith* was decided on a motion for summary judgment, its analysis is instructive in resolving the arguments presented here. Plaintiff's motion papers clearly suggest that he too was aware that, "[l]ike every defaulted credit card account, Plaintiff accrued late charges or fees in relation to non-payment." (Dkt. 25 at 11). Plaintiff argues that it is immaterial whether he was personally confused or misled by the Letter because the "least sophisticated consumer" test is an objective standard. (*Id.* at 12-13). It is true that the "least sophisticated consumer" standard "is objective, 'pays no attention to the circumstances of the particular debtor in question,' and asks only 'whether the hypothetical

least sophisticated consumer could reasonably interpret' the representation in a way that is inaccurate." *Arias*, 875 F.3d at 135 (emphasis omitted) (quoting *Easterling v. Collecto, Inc.*, 692 F.3d 229, 234 (2d Cir. 2012)). Nevertheless, "the Second Circuit 'has been careful not to conflate lack of sophistication with unreasonableness.'" *Derosa v. CAC Fin. Corp.*, 278 F. Supp. 3d 555, 559 (E.D.N.Y. 2017) (quoting *Ellis*, 591 F.3d at 135), *aff'd*, 740 F. App'x 742 (2d Cir. 2018). Indeed, if "every defaulted credit card account" does in fact accrue charges or fees as Plaintiff rightfully suggests, the "least sophisticated consumer"—having a "rudimentary amount of information about the world and a willingness to read a collection notice with some care," *Greco*, 412 F.3d at 363—cannot be presumed ignorant of the fact that charges or fees have certainly accrued since his default. In other words, to find Plaintiff's first interpretation of the Letter reasonable would require this Court to view the "least sophisticated consumer" as willing to accept a construction of his financial records that is contrary to the normal state of affairs expected when one fails to pay his credit obligations. The Court rejects the notion that this hypothetical consumer, naïve as he or she may be, does not know the rudimentary fact that charges or late fees accrue upon the default of a credit card account.[2] *See Weiss v. Zwicker*

---

[2]      At least one court in this district has noted that the Second Circuit's position "is not entirely clear" as to whether "the 'least sophisticated consumer' should be assumed to be familiar with his own account history and/or his course of dealing with the creditor/debt collector." *Hummel v. Forster & Garbus LLP*, No. 16-CV-6288 CJS, 2017 WL 4697514, at *5 (W.D.N.Y. Oct. 19, 2017). In a 2012 published decision, the Second Circuit determined that it was erroneous for the district court to have "placed considerable—if not dispositive—weight on the facts and circumstances surrounding [the plaintiff]'s background, seemingly in an effort to establish that she was not, in fact, deceived by the Collection Letter." *Easterling*, 692 F.3d at 234. The *Easterling* court reasoned that because "the least sophisticated consumer test pays no attention to the circumstances of the

& *Assocs., P.C.*, 664 F. Supp. 2d 214, 217 (E.D.N.Y. 2009) ("The Court finds that there is nothing confusing or misleading about the increased amount of debt stated in the June 28th Letter as even the most unsophisticated consumer would understand that credit card debt accrues interest.").

Furthermore, the Seventh Circuit extended *Barnes* to a § 1692e cause of action, where the plaintiff claimed that the debt collector violated the FDCPA when it identified the "principal balance" in the collection letter, but failed to disclose that this value "included interest charged" by the original creditor. *Wahl v. Midland Credit Mgmt., Inc.*,

---

particular debtor in question, . . . it was error for the district court to rely on such circumstances here." *Id.* However, in a more recent unpublished decision, the Second Circuit questioned whether *Easterling* should be construed so broadly. *See DiMatteo v. Sweeney, Gallo, Reich & Bolz, L.L.P.*, 619 F. App'x 7, 9-10 (2d Cir. 2015). In *DiMatteo*, the plaintiff argued that the court "should disregard any background facts known to him" in applying the "least sophisticated consumer" test. *Id.* at 9. The Second Circuit—without deciding the issue—indicated that the instant facts "did not pertain to the debtor's background, financial circumstances or sophistication, but merely to what even the 'least sophisticated consumer' would know about the context of the ongoing dispute leading to the assertion of the debt." *Id.* at 9-10. Notably, the court stated that it was "not certain that the language in *Easterling* reaches so far." *Id.*

In light of the Second Circuit's decision in *DiMatteo*, the Court is inclined to agree with the *Hummel* court that "if one of the 'dual purposes' of the FDCPA is to 'protect[ ] debt collectors from unreasonable constructions of their communications,' it would seem to make little sense, when construing such communications, to pretend that a reasonable consumer would be unaware of the 'context of [his own] ongoing dispute' with the debt collector." 2017 WL 4697514, at *5 n.11 (quoting *Jacobson*, 516 F.3d at 90); *accord Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 646 (7th Cir. 2009) (indicating that the "unsophisticated consumer" should be considered to have "a reasonable knowledge of her account's history"). Since the "least sophisticated consumer" is "neither irrational nor a dolt," *Ellis*, 591 F.3d at 135, the Court sees no reason to conclude that this hypothetical consumer has no knowledge of his account history or course of dealings with his creditors and debt collector.

556 F.3d 643, 645 (7th Cir. 2009). The *Wahl* court reasoned that the plaintiff "ignores [the debt collector's] role in the process entirely," and that "[t]he interest charged by [the creditor] *was very much part of the principal balance* in [the debt collector]'s eyes." *Id.* at 646 (emphasis added). In other words, when the debt collector acquired the debt, it did so inclusive of any interest that had accumulated to the creditor. Accordingly, "the starting or original amount owed, as far as [the debt collector] was concerned," was the "principle balance" stated in the validation letter.[3] *Id.*

Analogously, the Letter listed the debtor (Plaintiff, in this case), the creditor, and the original creditor. (Dkt. 20-1). Plaintiff was also informed of Einstein's role as the debt collection agency hired to secure the balance on his account. (*Id.*). Plaintiff was instructed that the balance—at the time the account was charged off—was $2,597.00, and that no "post-charge off interest" and "charges or fees" had accrued, and that no "less payments/credits" had been applied to this balance. (*Id.*). Finally, Plaintiff was informed that his "Total Balance Due" was $2,597.00. (*Id.*). This balance was the "starting or original amount owed" to Einstein. *See Wahl*, 556 F.3d at 646.

The Letter correctly indicates that the debt sought by Einstein includes a "Charge-Off Balance" and "Total Balance Due" of $2,597.00, and that zero interest, charges, or fees

---

[3]     While acknowledging that *Barnes* addressed § 1692g of the FDCPA, the *Wahl* court stated that "it involved a principle equally germane to Wahl's suit" under § 1692e. 556 F.3d at 646. The Seventh Circuit explained that if the creditor had "authored a letter identifying as the 'principal balance' a sum containing massive amounts of interest charged at its own hand, that would have been misleading[,]" but because the defendant was "the debt collector, not the creditor," the "nature of the debt owed" to the creditor was immaterial. *Id.* at 647.

have been applied to that charge-off balance. *Humes*, 2007 WL 2793398, at *3 ("Blatt's statement of Humes' debt is entirely correct as the debt sought by Blatt consists of $4747.08 principal (the entire amount of the debt assigned by Citibank) and zero accrued interest."). It would be unreasonable for the "least sophisticated consumer" to view the itemization of "Charges or Fees," identified as $0.00, to include the charges or fees imposed before the account was charged off. To do so would require the consumer to interpret the Letter as if it was sent by the creditor, not the debt collector, and to believe that the balance listed was that between himself and the creditor, not the debt collector—the entity *seeking* to collect on his debt. Because "[s]tatements in the collection letter should be interpreted as relating to" the "relationship between the debtor and the collection agency," *Smith*, 2007 WL 4365335, at *3; *see Castro*, 959 F. Supp. 2d at 709 n.11; *Humes*, 2007 WL 2793398, at *3, the least sophisticated consumer would reasonably be able to conclude that the "charges or fees" did not refer to the charges or fees that had accumulated *pre*-charge off, but referred to those accruing after that point in time, *see Wahl*, 556 at 646 ("The unsophisticated consumer, with a reasonable knowledge of her account's history, would have little trouble concluding that the 'principal balance' included interest charged by [the creditor].").

Therefore, since the FDCPA "does not extend to every bizarre or idiosyncratic interpretation of a collection notice," *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 85 (2d Cir. 2018) (quotation omitted), Plaintiff's first cause of action is dismissed.

## C. Plaintiff's Second Cause of Action Fails to State a Claim Under the FDCPA

### 1. The Home Owner's Loan Act and the National Bank Act Contain Equivalent Preemption Provisions

Plaintiff also seeks redress for Defendants' purported attempt to collect interest at a rate in excess of New York State's criminal usury statute. (Dkt. 20 at 7-9). Plaintiff does not argue that Defendants have themselves charged an usurious interest rate. Instead, Plaintiff contends that because Defendants sought to collect a total balance that is, in part, composed of interest once charged at a rate greater than New York law permits, Defendants have violated the usury statute by taking or receiving that sum.[4] (Dkt. 25 at 19-22). Although Plaintiff cites no caselaw in support of his novel theory of FDCPA liability, he urges this Court to extend the Second Circuit's decision in *Madden v. Midland Funding, LLC*, 786 F.3d 246 (2d Cir. 2015) to encompass the circumstances presented here. Specifically, Plaintiff asks this Court to recognize FDCPA liability when a savings association charges *interest* on a debt—at a rate exceeding the maximum allowed under New York law—before transferring the balance owed to a non-savings association entity, which then seeks to collect the *principal* due upon charge off.

---

[4]    New York law provides:

> A person is guilty of criminal usury in the second degree when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter period.

N.Y. Penal Law § 190.40.

In *Madden*, the Second Circuit acknowledged that the National Bank Act, 12 U.S.C. § 21 *et seq.* ("NBA"), "expressly permits national banks to 'charge on any loan . . . interest at the rate allowed by the laws of the State, Territory, or District where the bank is located.'" 786 F.3d at 250 (quoting 12 U.S.C. § 85). Although the instant matter does not involve a national bank, Plaintiff's debt was originally owned by a federal savings association, Synchrony Bank. (*See* Dkt. 20 at 4; Dkt. 22-3; Dkt. 25-5). Synchrony Bank's headquarters appear to be located in the State of Utah. (Dkt. 25-5).

"Historically, federal savings banks were chartered under the [Home Owner's Loan Act]," 12 U.S.C. § 1461, *et seq.* ("HOLA"). *In re Checking Account Overdraft Litig.*, 880 F. Supp. 2d 1290, 1295 (S.D. Fla. 2012). These savings associations were regulated by the Office of Thrift Supervision ("OTS") and were "subject to a different regulatory regime than national banks chartered under the NBA and overseen by the [Office of the Comptroller of the Currency ('OCC')]." *Id.* "The Supreme Court has noted that th[e] statutory language found in HOLA 'suggests that Congress expressly contemplated, and approved, [OTS'] promulgation of regulations superseding state law.'" *Poindexter v. Wachovia Mortg. Corp.*, 851 F. Supp. 2d 121, 126 (D.D.C. 2012) (quoting *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 162 (1982)). In fact, the Supreme Court indicated that "[i]t would have been difficult for Congress to give the Bank Board a broader mandate." *Fid. Fed. Sav. & Loan Ass'n*, 458 U.S. at 161 (quotation omitted).

However, "[o]n July 21, 2010, the Dodd-Frank Wall Street Reform and Consumer Protection Act was enacted. Under Dodd-Frank, savings institutions no longer 'occupy the field in any area of State law' and the same preemption standards that apply to banks,

pursuant to the NBA, apply to savings institutions under HOLA." *Poindexter*, 851 F. Supp. 2d at 128 n.11 (citation omitted); *see Zink v. First Niagara Bank, N.A.*, No. 13-CV-01076 A M, 2014 WL 1875577, at *3 n.4 (W.D.N.Y. Jan. 27, 2014) ("Passage of the Dodd-Frank Act has changed both the type of preemption applicable under HOLA and the identity of the agency that oversees federal savings and loan associations." (quoting *Molosky v. Wash. Mutual, Inc.*, 664 F.3d 109, 113 n.1 (6th Cir. 2011))); *Checking Account Overdraft Litig.*, 880 F. Supp. 2d at 1295-96 ("Among other things, Dodd-Frank transferred oversight responsibility for federal savings banks to the OCC and . . . replaced federal savings banks' field preemption with conflict preemption."). As a result, "[i]f there were any doubt as to whether preemption under HOLA was equivalent to preemption under the NBA, the recent Dodd-Frank legislation lays such doubt to rest." *Tamburri v. Suntrust Mortg., Inc.*, 875 F. Supp. 2d 1009, 1019 (N.D. Cal. 2012); *see generally* 12 U.S.C. § 1465(b) ("Notwithstanding the authorities granted under sections 1463 and 1464 of this title, this chapter does not occupy the field in any area of State law.").

The HOLA expressly permits a savings association to "charge interest on any extension of credit . . . at the rate allowed by the laws of the State in which such savings association is located. . . ." 12 U.S.C. § 1463(g)(1). Because this preemption provision is substantially similar to that set forth in the NBA, and because the preemption analysis under the HOLA is equivalent to that required under the NBA, there appears to be no reason why *Madden*'s holding would not apply equally to federal savings associations.[5]

---

[5]     Indeed, Defendants do not set forth any argument suggesting otherwise.

Nevertheless, while Plaintiff characterizes his claim as a "logical extension" of *Madden* (Dkt. 25 at 27), in fact, Plaintiff's second cause of action falls well beyond the scope of the Second Circuit's decision in that case.

### 2. *Madden* Does Not Support Plaintiff's Position

In *Madden*, the defendants, "assignees of a national bank," argued that they could benefit from the NBA's preemption provision "to charge interest at the rate permitted by the state where the assignor national bank is located." 786 F.3d at 250. However, the Second Circuit rejected this claim, stating that "[t]o apply NBA preemption to an action taken by a non-national bank entity, application of state law to that action must significantly interfere with a national bank's ability to exercise its power under the NBA." *Id.* The Second Circuit noted that, "[i]n most cases in which NBA preemption has been applied to a non-national bank entity, the entity has exercised the powers of a national bank—i.e., has acted on behalf of a national bank in carrying out the national bank's business." *Id.* at 251. Accordingly, the *Madden* court refused to apply NBA preemption where a non-national bank entity sought *to charge* an interest rate exceeding that permitted by New York law *after* it had purchased the debt from a national bank entity.

Plaintiff's attempt to extend *Madden* to the facts of this case is a bridge too far. Plaintiff's argument hinges on the theory that by attempting to collect the *principal* due as of April 12, 2017, Defendants also violated New York's usury statute because that principal was composed of interest that had accrued at a rate of 26.99% while the debt was owned by Synchrony Bank. (*See* Dkt. 25 at 19-22). This strained interpretation of *Madden* is unsupported by the Second Circuit's decision in that case.

In reaching its conclusion, the *Madden* court distinguished *Phipps v. F.D.I.C.*, 417 F.3d 1006 (8th Cir. 2005). *See Madden*, 786 F.3d at 253. In *Phipps*, the plaintiffs also challenged the applicability of NBA preemption to certain fees charged against them. *See* 417 F.3d at 1012-13. The Eighth Circuit rejected the plaintiffs' argument and determined that the fees were charged by the national bank, indicating that "[c]ourts must look at the originating entity (the bank), and not the ongoing assignee . . . in determining whether the NBA applies." *Id.* at 1013 (quotation omitted). In distinguishing *Phipps*, the *Madden* court noted that "the national bank was the entity that charged the interest to which the plaintiffs objected," while "Madden objects only to the interest charged *after* her account was sold by [the national bank] to the defendants." *Madden*, 786 F.3d at 253 (emphasis added). Accordingly, *Madden* does not itself support Plaintiff's position. As Defendants note (Dkt. 22-4 at 23-24), the distinction the Second Circuit draws between *Phipps* and the facts in *Madden* suggests that interest charged by a national bank—or in this case, a savings association—does not become interest charged by a third-party once the balance has been sold off.

Plaintiff's interpretation of New York's criminal usury statute is also erroneous. Plaintiff's attempts to distinguish the instances where an entity "charges, takes or receives" money as interest, *see* N.Y. Penal Law § 190.40, are unpersuasive. Regardless of whether one "charges, takes or receives any money or other property as interest on the loan," what that entity acquires must still be, in fact, "*interest* on the loan" to fall within the usury statute. *See id.* (emphasis added). At the time Plaintiff's debt was charged off, all past interest charged to his credit card account while in the hands of Synchrony Bank had

become the principal balance to be paid Einstein as his debt collector. *See generally Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757 (7th Cir. 2009) ("[W]hen interest is compounded, today's interest becomes tomorrow's principal, so all past-due amounts accurately may be described as 'principal due'."); *Wahl*, 556 F.3d at 646 ("The interest charged by [the creditor] was very much part of the principal balance in [the debt collector]'s eyes."). Therefore, Einstein's attempt to collect the *principal* balance on Plaintiff's credit card account, by definition, does not implicate New York's usury laws unless *Einstein*, not Synchrony Bank, had charged Plaintiff interest in violation of New York's statutes.

Plaintiff's contention, if accepted, would also lead to an unacceptable conclusion. If, as Plaintiff suggests, any interest lawfully charged by Synchrony Bank constitutes unlawful interest charges after the principal has been sold to a non-savings association entity, then debt collectors would purchase such debt at their peril because any attempt to collect upon the principal would inevitably involve the collection of monies once considered interest charged by the savings association. As mentioned above, the FDCPA also serves to "protect[] debt collectors from unreasonable constructions of their communications." *Jacobson*, 516 F.3d at 90. Courts in this Circuit "may decline to interpret the FDCPA in a manner that 'would thwart the obvious purpose of the statute.'" *Kropelnicki*, 290 F.3d at 127-28 (quoting *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 118 (2d Cir. 1998)). Construing the FDCPA as a barrier to the collection of principal composed of lawful interest charges would be wholly unreasonable and completely

unrelated to the purposes for which the statute was enacted. As such, the Court rejects the theory of liability Plaintiff advances to support his second cause of action.

Furthermore, while Plaintiff relies upon *Llewellyn v. Asset Acceptance, LLC*, 669 F. App'x 66 (2d Cir. 2016) for the proposition that New York usury laws apply to non-savings association entities after they purchase debt held by savings associations (Dkt. 25 at 21-22), *Llewellyn* actually undermines Plaintiff's position. In *Llewellyn*, the plaintiff challenged the validity of her debt before the district court, arguing that the national bank had "applied an interest rate of 25.99% per annum, in excess of New York's civil and criminal usury laws. . . ." *Llewellyn v. Asset Acceptance, LLC*, No. 14-CV-411 NSR, 2015 WL 6503893, at \*4 (S.D.N.Y. Oct. 26, 2015), *aff'd*, 669 F. App'x 66 (2d Cir. 2016). In confirming the validity of the plaintiff's debt, the district court acknowledged that the national bank was not a party to the suit and determined that "no party in this case is attempting to collect interest from [the p]laintiff in excess of New York's usury laws." *Id.* at \*5. On appeal, the Second Circuit noted that because the national bank is "located in South Dakota, . . . New York usury law does not apply" to it. *Llewellyn*, 669 F. App'x at 68. Although the *Llewellyn* court indicated that New York's usury statutes did apply to the defendant debt collectors, it also found that "the district court properly determined that *neither defendant* charged her usurious interest on her *post-default debt*," and that the "25.99 percent annual interest rate charged on her *pre-default debt by a national bank* did not violate New York usury law" and did not "undermine the validity of the debt now being collected." *Id.*

Likewise, Plaintiff has failed to assert that at any time Defendants have actually charged him an usurious interest rate. The fact that Synchrony Bank may have charged Plaintiff an interest rate in excess of New York's usury laws does not invalidate the debt sought by Defendants—Synchrony Bank is located in Utah and thus, New York's usury laws do not apply. (*See* Dkt. 25-5); *Llewellyn*, 669 F. App'x at 68. While New York's usury laws apply to Defendants, their attempt to collect the principal due on Plaintiff's credit card account does not implicate New York's usury statutes and does not violate the FDCPA.

Therefore, Defendants' motion to dismiss Plaintiff's second cause of action is granted.

## III. Defendants' and Plaintiff's Respective Requests for Sanctions are Denied

### A. Defendants' Request for Rule 11 Sanctions is Procedurally Defective

"Rule 11 requires that a motion for sanctions 'be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).'" *Intravaia ex rel. Intravaia v. Rocky Point Union Free Sch. Dist.*, No. 12-CV-0642 (DRH) (AKT), 2014 WL 7338849, at *3 (E.D.N.Y. Dec. 22, 2014) (quoting Fed. R. Civ. P. 11(c)(2)). Rule 11 also requires that "the motion must be served on the offending party twenty-one days before it is filed with the court." *Rogers v. Henry*, No. 16-CV-05271 (KAM)(VMS), 2017 WL 5495805, at *4 (E.D.N.Y. Sept. 12, 2017) (citing Fed. R. Civ. P. 11(c)(2)). "Any motion seeking Rule 11 sanctions that does not comply with these provisions must be denied." *Intravaia*, 2014 WL 7338849, at *3.

Here, Defendants' motion for Rule 11 sanctions must be dismissed because it was not made separately from their motion to dismiss. (Dkt. 22); *see Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008) (affirming the district court's denial of the defendants' Rule 11 motion where the defendants "failed to make a separate motion for sanctions under Rule 11, and therefore failed to comply with the procedural requirements of the rule"); *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 89-90 (2d Cir. 1998) (reversing the district court's decision to impose sanctions where the movant "included its request for sanctions in its letter requesting a Rule 54(b) certification, thereby failing to give [the non-movant] the separate notice referred to in Rule 11"); *Begonja v. Vornado Realty Tr.*, 159 F. Supp. 3d 402, 414-15 (S.D.N.Y. 2016) ("[D]efendants' request for attorneys' fees under Rule 11 was made together with the motion to dismiss rather than as a separate motion, and for that reason alone it must be denied."); *see also Intravaia*, 2014 WL 7338849, at *6 (stating that "service of a separate motion for sanctions" is necessary to comply with Rule 11's safe harbor provision (citing *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012))). In addition, Defendants have failed to demonstrate that they served their motion for sanctions upon Plaintiff 21 days before filing it. Indeed, a review of the electronic docket reveals that Defendants filed their motion for sanctions just two weeks after Plaintiff filed his Amended Complaint. Accordingly, Defendants could not have complied with Rule 11's safe harbor provision. *See Rogers*, 2017 WL 5495805, at *4 ("Because '[c]ompliance with Rule 11's safe harbor provision is mandatory . . . failure to do so will result in a denial of the sanctions motion.'" (quoting *Libaire v. Kaplan*, No. CIV.A. 06-1500, 2008 WL 794973, at *12 (E.D.N.Y. Mar.

24, 2008))); *Castro v. Mitchell*, 727 F. Supp. 2d 302, 306 (S.D.N.Y. 2010) ("A motion that fails to comply with the safe harbor provision of Rule 11 must be denied.").

Therefore, without reaching its merits, the Court declines to consider Defendants' request for Rule 11 sanctions, because Defendants failed to comply with Rule 11's procedural requirements in moving for sanctions against Plaintiff. *McLeod v. Verizon N.Y., Inc.*, 995 F. Supp. 2d 134, 145 (E.D.N.Y. 2014); *Banfield v. UHS Home Attendants, Inc.*, No. 96 CIV. 4850 (JFK), 1997 WL 342422, at *3 (S.D.N.Y. June 23, 1997).

### B. Defendants' Request that Sanctions be Imposed Pursuant to 28 U.S.C. § 1927 or the Court's Inherent Authority is Without Merit

"Another vehicle by which a court may issue sanctions is Section 1927 of Title 28 of the United States Code." *Mahoney v. Yamaha Motor Corp. U.S.A.*, 290 F.R.D. 363, 367 (E.D.N.Y. 2013). Section 1927 provides as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. "The purpose of the statute is to deter dilatory tactics, unnecessary delays in litigation, and bad faith conduct by attorneys." *Palagonia v. Sachem Cent. Sch. Dist.*, No. 08-CV-0791 (JS)(ETB), 2010 WL 811301, at *2 (E.D.N.Y. Mar. 1, 2010); *see United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991) ("By its terms, § 1927 looks to unreasonable and vexatious multiplications of proceedings; and it imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics."). However, "[c]ourts in this

[C]ircuit construe the statute 'narrowly and with great caution, so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law.'" *Romeo v. Sherry*, 308 F. Supp. 2d 128, 148 (E.D.N.Y. 2004) (quoting *Mone v. C.I.R.*, 774 F.2d 570, 574 (2d Cir. 1985)).

"The court [also] has inherent power to sanction parties and their attorneys, a power born of the practical necessity that courts be able 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). "Sanctions under the court's inherent power are appropriate when a party 'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Walker v. Smith*, 277 F. Supp. 2d 297, 301 (S.D.N.Y. 2003) (quoting *Chambers*, 501 U.S. at 45-46).

The "only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power" is that an award granted "under § 1927 [is] made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986). "As a consequence, requests for sanctions under Section 1927 and pursuant to the court's inherent authority may be decided in a single inquiry." *In re Khan*, 488 B.R. 515, 531 (Bankr. E.D.N.Y. 2013), *aff'd sub nom. Dahiya v. Kramer*, No. 13-CV-3079 DLI, 2014 WL 1278131 (E.D.N.Y. Mar. 27, 2014), *aff'd sub nom. In re Khan*, 593 F. App'x 83 (2d Cir. 2015). "To impose sanctions under either § 1927 or this Court's inherent powers, there must be clear evidence that '(1) the offending party's claims were entirely without color, and (2) the

claims were brought in bad faith—that is, motivated by improper purposes such as harassment or delay.'" *United States v. Prevezon Holdings, Ltd.*, 305 F. Supp. 3d 468, 478-79 (S.D.N.Y. 2018) (emphasis omitted) (quoting *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000)); *see also Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009) ("Imposition of sanctions under a court's inherent powers requires a specific finding that an attorney acted in bad faith."); *Int'l Bhd. of Teamsters*, 948 F.2d at 1345 ("Bad faith is the touchstone of an award under [28 U.S.C. § 1927]."). "The decision to issue sanctions under either ground lies within this Court's broad discretion." *Prevezon Holdings, Ltd.*, 305 F. Supp. 3d at 478.

Here, Defendants fail to offer any evidence that Plaintiff or his counsel acted in bad faith in filing the Amended Complaint. Defendants argue that Plaintiff's Amended Complaint "is not only unsupported by the law or any applicable extension of it," but was filed "vexatiously to drive up Defendants' litigation costs in order to circumvent [Defendants'] first motion to dismiss and unreasonably prolong this case." (Dkt. 22-4 at 29). In asserting his second cause of action, Plaintiff admitted that he had no case support for his interpretation of New York's usury statute, but instead sought to raise a novel theory of FDCPA liability. (*See* Dkt. 25 at 16, 21).

The Court is not entirely unsympathetic to Defendants' arguments. Indeed, Plaintiff's "logical extension" of *Madden* is not logical at all and is unsupported by any reasonable interpretation of that decision. *See generally Wolters Kluwer Fin. Servs., Inc.*, 564 F.3d at 114 ("Conduct is entirely without color when it lacks any legal or factual basis. . . ."). As Plaintiff concedes, there does not appear to be any authority standing for

the proposition that interest, lawfully charged by one entity, becomes unlawfully taken or received by a second entity after the latter has rightfully purchased the balance and seeks to collect the principal. Nonetheless, "[s]anctions, under any authority, should not be imposed lightly. They are the exception, not the norm, even in the face of aggressive litigation tactics and strategy." *Khan*, 488 B.R. at 528. Although "[b]ad faith can be inferred when the actions taken are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose," *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 338 (2d Cir. 1999) (quotation omitted), general inferences of bad faith are disfavored by courts in this Circuit, and rightfully so, *see Eisemann*, 204 F.3d at 397 (reversing the imposition of sanctions where "the [c]ourt's conclusory determination that Eisemann's motion was filed in bad faith rested almost entirely on its lack of merit"); *Mahoney*, 290 F.R.D. at 370 (declining to award sanctions even if the plaintiff's counsel "had knowledge that [the plaintiff's claims] regarding the motorcycle accident were meritless" because it is "improper to determine that a party acted in bad faith if that party filed a meritless claim").

These concerns carry even greater weight in this matter where Defendants seek the imposition of sanctions for the assertion of a novel—albeit, ill-fashioned—argument for a more expansive theory of liability under a consumer protection statute. *See Nemeroff v. Abelson*, 704 F.2d 652, 654 (2d Cir. 1983) (stating that although a "prevailing defendant is entitled to an award of attorney's fees" if an action is brought "without factual basis and in bad faith," such an award must be issued "with caution to make sure that plaintiffs are not deterred from suing to enforce their rights, especially when enforcement of those rights

vindicates the Constitution or acts of Congress"). In fact, courts generally decline to impose sanctions where the purported sanctionable conduct boils down to the advancement of a novel legal theory or a misinterpretation of the law. *See Prevezon Holdings, Ltd.*, 305 F. Supp. 3d at 483 ("Where no previous court has considered a particular or novel issue, sanctions under § 1927 generally are disfavored." (quotation omitted)); *Salvini v. ADVFN PLC*, No. 13 CIV. 7082 (ER), 2016 WL 1703414, at *4 (S.D.N.Y. Apr. 27, 2016) ("Misunderstanding the law or attempting to extend the law to a novel application is not an appropriate basis for sanctions."); *Classic Tool Design, Inc. v. Castrol Indus. N. Am., Inc.*, 58 F. Supp. 2d 313, 315 (S.D.N.Y. 1999) (declining to award sanctions where the plaintiff's actions were "more nearly reflecting a misunderstanding of the law . . . than as a deliberate insult to the [c]ourt"); *see also Ctr. for Discovery, Inc. v. D.P.*, No. 16CV3936 (MKB) (RER), 2018 WL 1583971, at *13 (E.D.N.Y. Mar. 31, 2018) (noting "that the advancement of novel theories or unique interpretations of case law cannot be the sole basis for Rule 11 sanctions"); *see generally Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 166 (2d Cir. 1999) ("The issue of sanctions brings to the surface the tension between the goal of discouraging abuse of the legal system and that of encouraging refinement of the law through the assertion of novel but non-frivolous legal theories.").

Therefore, although Plaintiff's second cause of action appears to be based upon an unfounded legal theory, the Court does not find "clear evidence" that Plaintiff or his counsel acted in bad faith in asserting this claim. Plaintiff's misunderstanding of the law may have resulted in the assertion of a meritless cause of action, but this alone is not

grounds for the imposition of sanctions. Accordingly, the Court declines to impose any award of sanctions on Defendants' behalf.

### C.   Plaintiff's Counter Request for Sanctions is Denied

Plaintiff has also requested an award of attorney's fees as a sanction against Defendants for seeking sanctions themselves. "[T]he filing of a motion for sanctions is itself subject to the requirements of [Rule 11] and can lead to sanctions." *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 421 (S.D.N.Y. 2003) (quoting Fed. R. Civ. P. 11 advisory committee's note (1993 Amendments)). While Plaintiff does not appear to have complied with the procedural requirements of Rule 11 discussed above, "[a] party defending a Rule 11 motion need not comply with the separate document and safe harbor provision when counter-requesting sanctions." *Patelco Credit Union v. Sahni*, 262 F.3d 897, 913 (9th Cir. 2001); *see also Lee v. Grand Sichuan E. (N.Y.) Inc.*, No. 12-CV-08652 SN, 2014 WL 199512, at *1 (S.D.N.Y. Jan. 17, 2014) ("A non-moving party seeking costs and attorneys' fees rarely needs to file a cross-motion under Rule 11."); Fed. R. Civ. P. 11 advisory committee's note (1993 Amendments) ("[S]ervice of a cross-motion under Rule 11 should rarely be needed since under the revision the court may award to the person who prevails on a motion under Rule 11—whether the movant or the target of the motion— reasonable expenses, including attorney's fees, incurred in presenting or opposing the motion."); *see generally Quinio v. Aala*, No. 15-CV-4912-PKC-SJB, 2017 WL 8646668, at *7 n.5 (E.D.N.Y. Dec. 21, 2017) (acknowledging this principle and noting that the exception to Rule 11's procedural requirements "only applies to Rule 11 cross-motions"). Accordingly, Plaintiff's counter request for sanctions is not procedurally defective.

Pursuant to Rule 11(c)(2), "[i]f warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2). Plaintiff has prevailed against Defendants' motion for sanctions insofar as the Court declines to impose sanctions pursuant to § 1927 or its inherent powers. However, the Court's research has not uncovered any authorities directly addressing whether the term, "prevailing party," encompasses those cases where the original Rule 11 motion is denied for the failure to comply with Rule 11's procedural requirements. While it is unclear whether a party can be deemed a "prevailing party" on a cross-motion for Rule 11 sanctions under such circumstances, the Court need not decide the issue here because sanctions are not "warranted" in this case.

"Rule 11 sanctions are an extraordinary remedy, and a movant must therefore meet a 'high bar' before sanctions are imposed on an adversary." *Lotocky v. Elmira City Sch. Dist.*, 102 F. Supp. 3d 455, 456 (W.D.N.Y. 2015) (quotation omitted).

> A pleading, motion or other paper violates Rule 11 either when it has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

*Kropelnicki*, 290 F.3d at 131 (quotation omitted). "[R]ule 11 is violated only when it is 'patently clear that a claim has absolutely no chance of success.'" *Oliveri*, 803 F.2d at 1275 (quoting *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985), *superseded on other grounds as stated by Sorenson v. Wolfson*, 683 F. App'x 33, 35 (2d Cir. 2017)). "The decision whether to grant sanctions under Rule 11 lies within the

discretion of the district court." *Rodenhouse v. Palmyra-Macedon Cent. Sch. Dist.*, No. 07-CV-6438 CJS, 2008 WL 2331314, at *6 (W.D.N.Y. June 3, 2008).

Although the Court did not reach the merits of Defendants' Rule 11 application, the reasons Defendants advanced for the imposition of sanctions under that Rule are similar to those asserted in support of their related § 1927 and inherent powers arguments. (*See* Dkt. 22-4 at 27-29). Based upon the Court's review of those latter arguments, Defendants' request for a sanctions award under any of these authorities was certainly "well grounded in fact" and "warranted by existing law." *Kropelnicki*, 290 F.3d at 131. Plaintiff contends that Defendants' motion for sanctions was improperly filed as an intimidation tactic. (Dkt. 25 at 30-31). However, considering that even Plaintiff concedes he was unable to find case authority in support of his interpretation of the New York usury statute (*see* Dkt. 25 at 21), as well as his flawed belief that *Madden* could form the basis for his claim, there is no indication that Defendants filed their motion for an "improper purpose" or that it was "utterly without support." *ED Capital, LLC v. Bloomfield Inv. Res. Corp.*, 316 F.R.D. 77, 82 (S.D.N.Y. 2016) (denying the plaintiff's request to award "costs and fees associated with defending the Rule 11 Motion" because the Rule 11 Motion was not "filed for an improper purpose" and was not "utterly without support" (citation omitted)); *Lotocky*, 102 F. Supp. 3d at 457-58 (denying cross motion for sanctions where the defendant's "interpretation of the facts and law presented is not unreasonable, nor is it so glaringly frivolous or unfounded as to merit an award of sanctions").

Therefore, because Plaintiff's request for an award of attorney's fees is not warranted, the Court denies Plaintiff's cross-motion for sanctions.

## CONCLUSION

For the foregoing reasons, Defendants' first and amended motions to dismiss (Dkt. 17; Dkt. 19) are dismissed as moot, Defendants' third motion to dismiss (Dkt. 22) is granted, and Defendants' and Plaintiff's respective requests for sanctions (Dkt. 22; Dkt. 25) are denied. The Clerk of Court is directed to close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:      February 5, 2019
            Rochester, New York